**IT IS ORDERED as set forth below:**

**Date: September 30, 2019**

_____

**Sage M. Sigler**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | : | |
| | : | **CASE NUMBER:** |
| **WAHIDA LATIF,** | : | |
| | : | **18-68265-SMS** |
| Debtor. | : | |
| _____ | : | CHAPTER 7 |

**ORDER DENYING MOTION TO DISMISS, SUSTAINING OBJECTION TO CLAIMED EXEMPTIONS, AND APPROVING INTERIM APPLICATION FOR COMPENSATION**

Before the Court is the *Need to Dismiss Case 18-6265* (the "Motion," Doc. 38), which the Court construes as a motion to dismiss this chapter 7 case, filed by debtor Wahida Latif ("Debtor"), the *Objection to Claimed Exemptions* (the "Objection," Doc. 42), filed by the chapter 7 trustee, and the *First Interim Application of Arnall Golden Gregory LLP For Allowance and Reimbursement of Expenses as Counsel for the Trustee,* (the "Application," Doc. 56), filed by Arnall Golden Gregory, LLP ("AGG"). For the reasons set forth below, the Court concludes that the Motion should be denied, the Objection should be sustained, and the Application should be granted.

**I.     Jurisdiction**

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and the Court has authority to enter a final judgment. This Order constitutes the Court's proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1).

**II.    Procedural History**

Debtor filed a voluntary petition for relief, *pro se*, on October 31, 2018. (Doc. 1). The *Report of Chapter 7 Trustee of Assets and Request for Bar Date* was filed on February 7, 2019, and the deadline to file proofs of claim was May 9, 2019. (Docs. 30-31). The chapter 7 trustee's *Application to Employ Real Estate Agent Under Listing Agreement* was granted on February 21, 2019. (Docs. 36-37). The Motion was filed on February 21, 2019. The *Trustee's Response in Opposition to Debtor's Motion to Dismiss Case and Request for Order Compelling Debtor to Cooperate* (the "Response," Doc. 43) was filed on March 1, 2019. Counsel for Debtor entered a notice of appearance and filed a *Brief in Support of Debtor's Motion to Dismiss Chapter 7 Case* (the "Brief," Doc. 46) on April 5, 2019. The Objection was filed on February 25, 2019. No response was filed to the Objection. On April 17, 2019, the Court held a hearing on the Motion and the Objection, which was continued to May 15, 2019, and again to June 26, 2019, after which the Court took the matters under advisement.

On June 28, 2019, the Court entered an *Order Directing Counsel for the Chapter 7 Trustee to File a Fee Application Within 14 Days*. (Doc. 53). The Application was filed on July 12, 2019. *Debtor's Response to First Interim Application of Arnall Golden Gregory, LLP For Allowance of Compensation and Reimbursement of Expenses as Counsel for the Trustee* ("Debtor's Response") was filed on August 7, 2019, and requests that the Application be denied, or that the fees awarded

be drastically reduced. (Doc. 60). The Court held a hearing on the Application on August 14, 2019, and took the matter under advisement.

### III.  Findings of Fact

Debtor filed a voluntary petition for relief under chapter 7 on October 31, 2018, without the benefit of counsel and under the mistaken belief that she could exempt the full value of her home, and unaware that the trustee would be able to sell her home for the benefit of the estate. Debtor testified at the final hearing that she had fallen behind on her bills, other than her mortgage, and was receiving collection calls, which prompted the filing. Once she realized her home was at risk of being sold by the trustee, Debtor filed the Motion. There is no indication that the petition was filed in bad faith or that Debtor's intent was to manipulate the bankruptcy system. It appears that Debtor was unaware of the legal consequences of filing, believing that because she was current on her mortgage her home would not be affected by the filing. Debtor now wishes to dismiss her case to avoid the sale of her home.

Debtor scheduled an interest in real property located at 2764 Jagged Rock Court, Decatur, GA 30034 (the "Property"). (Doc. 11 at 13). Debtor valued the property at $119,000 and claimed an exemption in the same amount. (*Id.* at 23). In her amended schedules, Debtor lists two encumbrances on the Property: a mortgage held by Midland Mortgage in the amount of $67,000 and a disputed lien held by Fathers and Sons in the amount of $32,000 (the "Father & Sons Lien"). (Doc. 48 at 1–2). The amended schedules also list a judgment lien in favor of Salomia Pope ("the Judgment Lien") in the amount of $3,617.50. (*Id.* at 2). The title report obtained by the trustee indicates that the judgment was entered on the general execution docket twenty-three days prior to the petition date. Both the trustee and Debtor believe that the $32,000 lien is invalid and avoidable, (Brief at 2; Response at ¶ 14, n.1), and the trustee believes the Judgment Lien is also

avoidable (Response at ¶ 15, n.2). The trustee believes the Property should be marketed for $169,900, while the Debtor valued it at $119,000 on her schedules. Objection at ¶ 16; (Doc. 11 at 13, 23). If the Father & Sons Lien and the Judgment Lien are avoidable, there is between $50,000 and $100,000 of equity in the property, exclusive of Debtor's exemption.

The claims bar date in this case was May 9, 2019. (Doc. 31). To date, thirteen claims have been filed consisting of one secured claim filed by Ally Bank in the amount of $11,226.44 and twelve unsecured claims totaling $64,998.61.[1] Most of the unsecured claims are amounts less than $5,000.[2] Debtor reports monthly income of $2,019.12 from her work as a seamstress, social security income, food stamps, and family contributions. (Doc. 51 at 2). Her largest monthly expenses are her mortgage payment of $545.19 and a car payment in the amount of $339.45. (*Id.* at 3, 4). Debtor's amended schedules I and J reflect positive net monthly income in the amount of $14.67. (*Id.* at 4). Thus, according to the schedules as filed and the testimony at the evidentiary hearing, Debtor does not currently have the means to pay her creditors outside of bankruptcy. And while she testified at the evidentiary hearing that she would make arrangements with her creditors to pay her debts outside of bankruptcy, neither Debtor nor her counsel provided any detail as to what those arrangements would be.

IV. **Conclusions of Law**

A. **The Motion**

Debtors do not have an absolute right to dismiss a chapter 7 case. *In re Mercer,* No. 09-71621-JTL, 2010 Bankr. LEXIS 4693, at *4 (Bankr. M.D. Ga. Dec. 16, 2010) (citing *In re Smith,*

---

[1] The trustee has not yet filed any objections to claims and, therefore, the amount of the claims filed may not be the final amount of allowed claims entitled to distributions.

[2] The exceptions are claim 7, filed by Department Stores National Bank in the amount of $12,358.39; claim 8, filed by LVNV Funding, LLC in the amount of $8,980.06; and claim 13, filed by Navient Solutions in the amount of $26,146.19.

507 F.3d 64, 72 (2d Cir. 2007)). Instead, "[t]he court may dismiss a case under [chapter 7] only after notice and a hearing and only for cause." 11 U.S.C. § 707(a). A chapter 7 debtor seeking voluntary dismissal bears the burden of establishing "cause, the sufficiency of which is left to the sound discretion of the Bankruptcy Court." *In re Pinnick,* 598 B.R 206, 209 (Bankr. W.D. Pa. 2019); *In re Simmons,* 200 F.3d 738, 743 (11th Cir. 2000) ("the burden for showing cause is on the moving party."). Three illustrative examples of cause are given in § 707(a), but the list is not exhaustive, and "cause" is not otherwise defined in the Code. As a result, "courts must view the facts case-by-case to determine whether sufficient cause exists for dismissal." *Mercer,* 2010 Bankr. LEXIS 4693 at *5 (citing *In re Dinova*, 212 B.R. 437, 442 (B.A.P. 2d Cir. 1997)).

Courts have developed three approaches to determine whether cause exists to voluntarily dismiss a case under § 707(a). On opposite ends of the spectrum are *In re Geller,* 74 B.R. 685 (Bankr. E.D. Pa. 1987), and *In re Turpen,* 244 B.R. 431 (B.A.P. 8th Cir. 2000). In *Geller*, the court concluded that "generally, a debtor wishing dismissal of a case should obtain his result in all but extraordinary circumstances." *Geller,* 74 B.R. at 689. The *Geller* approach has been criticized for requiring creditors opposing dismissal to negate "cause" by showing demonstrable prejudice. *Pinnick,* 598 B.R. at 209 (citing *In re Mech. Maint., Inc.*, 128 B.R. 382, 387 (E.D. Pa. 1991); *In re Jabarin,* 395 B.R. 330, 337 (Bankr. E.D. Pa. 2008)). At the other end of the spectrum, the *Turpen* court held that a court "should deny the motion if there is *any* showing of prejudice to creditors." *Turpen,* 244 B.R. at 434 (emphasis added). This approach focuses only on prejudice to creditors and does not consider the debtor's best interests. The middle-ground approach explained in *In re Aupperle,* 352 B.R. 43 (Bankr. D.N.J. 2005), considers whether dismissal is in the best interests of the debtor and the creditors, "with particular emphasis on whether the dismissal would be prejudicial to creditors." *Aupperle,* 352 B.R. at 46. This approach was recently adopted by the

*Pinnick* court, and this Court agrees that it affords the flexibility needed to determine whether "cause" for dismissal exists under § 707(a). *See Pinnick,* 598 B.R. at 210.

The facts in this case are very similar to *Pinnick.* In that case, the chapter 7 debtor had the benefit of counsel, who believed that the property at issue had no non-exempt equity due to his reasonable but erroneous reading of a commitment letter debtor had previously executed with the Urban Redevelopment Authority ("URA"). *Pinnick,* 598 B.R. at 207–08. As a result of the URA taking an unexpected position with respect to the commitment letter, there was substantial non-exempt equity in the debtor's home. *Id.* The chapter 7 trustee retained a realtor to list the property, after which the debtor filed a motion to dismiss. *Id.* at 208. The debtor had negative net monthly income and no capacity to pay her creditors outside of bankruptcy short of liquidating the equity in her home. The debtor argued that both her petition for relief and motion to dismiss had been filed in good faith, that her mistaken belief that the property would be protected amounted to cause for dismissal, and that the impact of dismissal on creditors would be negligible since they would retain their collection rights to pursue her outside of bankruptcy. *Id.* at 210-11.

After adopting the *Aupperle* approach, the court denied the debtor's motion, but imposed a sixty-day stay on the trustee's sale efforts. *Id.* at 212. First, the *Pinnick* court acknowledged and was sympathetic to the fact that the debtor had limited income and would be displaced from her home. *Id.* at 210. But the sale of the home would have resulted in full payment of all claims in her case and a cash surplus to the debtor in the approximate range of $55,000 to $125,000. And debtor had no means or concrete plan to pay her creditors outside of bankruptcy. As a result, the *Pinnick* court concluded that dismissal was not in the best interests of the debtor or her creditors. *Id.* at 212.

Similarly, Debtor in this case also mistakenly believed her home would be protected in bankruptcy, her net monthly income is *de minimis*, and she does not have a concrete or viable plan

to pay her creditors outside of bankruptcy. And although a sale would displace debtor from her home, Debtor will receive, at minimum, her $21,500 exemption.

Debtor's arguments for dismissal also echo the debtor's arguments in *Pinnick*: she asserts that the case was filed in good faith, that she would not have filed had she known her home would be vulnerable to a trustee sale, and that her creditors would not be greatly prejudiced by dismissal because they could exercise their state-law remedies to pursue collection outside of bankruptcy. Brief at 5–6. But, "a mistaken belief that the home would be protected in bankruptcy is not, by itself, a reason to dismiss a case once filed." *Pinnick,* 598 B.R. at 211 (citing *Maixner v. Surratt-States (In re Maixner)*, 288 B.R. 815, 818 (8th Cir. B.A.P. 2003)). Further, "the loss of a motivated fiduciary" results in prejudice to the creditors, particularly where—as here—many of the unsecured creditors have smaller claims and are therefore substantially less likely to seek payment from the property outside of bankruptcy. *Id.* Last, like the debtor in *Pinnick,* Debtor is unable to ameliorate the prejudice to the creditors because she does not possess any reasonable means to pay them in full outside of bankruptcy.

Thus, while the loss of a home is certainly a significant detriment, dismissal in this case is not in the best interests of Debtor or her creditors. Debtor's $21,500 exemption, along with a chapter 7 discharge, will afford Debtor a fresh start free from the collection actions of her creditors. Moreover, it is possible there are options Debtor has yet to fully explore that may allow her to both get the bankruptcy relief she needs and remain in her home, including refinancing her mortgage or conversion to chapter 13.[3] Debtor failed to carry her burden to demonstrate that cause exists to justify dismissal under § 707(a) and thus the Motion must be denied.

---

[3] Debtor testified at the hearing on the Motion that she may be willing to surrender her vehicle, which could provide the funds necessary to fund a chapter 13 plan.

**B. The Objection**

Debtor claimed the following exemptions on Schedule C: $119,000 for the Property; $10,000 for a Kia Soul, $300 for "Brothers"; $1,500 for a Samsung TV valued at $700; $2,000 for a Samsung stove and refrigerator; and $5,000 for everyday clothes. Doc. 11 at 23–24.

Georgia has opted out of the federal exemptions contained in 11 U.S.C. § 522, and instead provides its own exemptions for purposes of bankruptcy. O.C.G.A. § 44-13-100(b). As applicable here, those exemptions include a homestead exemption for debtor's aggregate interest[4] in real property not to exceed $21,500;[5] an exemption for motor vehicles not to exceed $5,000; up to $5,000 total and not more than $300 in any one item of household furnishings, goods, clothing, or appliances; and a wild card exemption of $1,200 plus up to $10,000 in unused homestead exemption. O.C.G.A § 44-13-100(a)(1), (3), (4), and (6).

In her schedules, Debtor did not list the specific law allowing for the exemptions she claimed (Doc. 11 at 23–24), nor has she filed an amended schedule C since the Objection was filed. *See* Docket, *passim.* The trustee objects to the exemption Debtor claimed in the Property and asks that it be limited to the $21,500 homestead exemption plus any unused portion of the $1,200 wild card exemption. Objection at ¶ 29. The "[t]rustee also objects to any and all other exemptions claimed to the extent that they exceed the statutory amounts provided under O.C.G.A. § 44-13-100)(a)." Having reviewed the claimed exemptions, the Court concludes that the trustee's objections should be sustained to the extent Debtor's claimed exemptions exceed the statutory caps listed in O.C.G.A. § 44-13-100.

---

[4] As the trustee notes in the Objection, Debtor's "aggregate interest" in real property means the unencumbered portion of the property. Objection at ¶ 26 (citing *Wallis v. Clerk, Superior Court of Dekalb County,* 305, S.E. 2d 639, 640 (Ga. App. Ct. 1983)).

[5] That amount is doubled to $43,000 when title "is in one of two spouses who is a debtor." O.C.G.A. § 44-13-100(a)(1). But Debtor is not married (Doc. 11 at 47) and is therefore only entitled to exempt up to $21,500 in the Property.

### C. The Application

The Application was filed on July 12, 2019 in response to the Court's request, Debtor's Response was filed on August 7, 2019, and a hearing was held on August 14, 2019. In the Application, AGG seeks interim fees in the amount of $15,000 (voluntarily reduced from $19,202) and reimbursement of expenses in the amount of $209.42. Detailed time records are attached to the Application. Debtor argues that the fees should be "denied or drastically reduced," and objects to the allowance of any fees incurred after May 2, 2019, on the basis that services provided after that date were duplicative and unnecessary.

Section 330(a) governs the compensation of officers and provides that "the court may award to a . . . professional person employed under § 327 or 1103 . . .(A) reasonable compensation for actual, necessary services rendered by the . . . attorney . . .; and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A)–(B). The trustee's application to employ AGG as counsel under § 327 was approved on January 22, 2019. (Doc. 26). When evaluating the "reasonableness" of the fees requested, courts in the Eleventh Circuit generally employ the lodestar method. *E.g. In re Citation Corp,* 493 F.3d 1313, 1321 (11th Cir. 2007) (finding that the lodestar method was appropriate in reviewing professional fees for reasonableness). Under the lodestar approach, courts multiply a reasonable hourly rate by the number of hours reasonably expended, adjusting for the quality of the results obtained. *In re Villa Capri of Georgia Assocs. Ltd. P'ship,* 141 B.R. 257, 260 (Bankr. N.D. Ga. 1992). The Eleventh Circuit has adopted the factors set forth in *Johnson v. Georgia Highway Express, Inc.*[6] for use when evaluating the reasonableness of the hourly rate. *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292 (11th Cir.

---

[6] 488 F.2d 514, 717–19 (5th Cir. 1974).

1988).[7] The Application addresses each factor and AGG's detailed time entries are also attached. Application at ¶ 34, Exh. A. The Application indicates that 52.90 hours of professional time were spent at a blended hourly rate of $283. *Id.* at ¶ 28. The specific attorney hourly rates were $430 and $445 and the rates for other professional legal assistants ranged from $185 to $270 per hour. Debtor's Response does not address any of the *Johnson* factors or the hourly rates charged, nor does it contain any objections to specific time entries. Counsel for Debtor did not raise any objections related to the *Johnson* factors or the specific time entries attached to the Application at the hearing, with the exception of time entries dated May 2, 2019, which Debtor's argued were incurred for the purpose of rescheduling a hearing for the trustee or his counsel's own convenience. Instead, Debtor argued generally that any work performed after the initially scheduled hearing on the Motion was unnecessary. In response, counsel for the trustee explained that because Debtor raised new arguments and legal theories at the first and second hearing, additional preparation was necessary. At the hearing, counsel for the trustee also responded to the Court's inquiries regarding certain time entries, explaining why certain paralegal time was appropriately categorized as legal services chargeable to the estate and further explaining another attorney's role in providing services to the estate. Such explanations were satisfactory to the Court.

The first hearing on the Motion was reset to allow the passage of the bar date so that the Court could better assess whether creditors would be prejudiced by the dismissal of the case. The second hearing on the Motion was continued for Debtor's benefit, to allow her additional time to determine whether she may be able to obtain a reverse mortgage and to otherwise prepare for a

---

[7] Those factors include: 1) the time and labor required; 2) the novelty and difficulty of the legal questions; 3) the skill required performing the legal services properly; 4) preclusion of other employment due to acceptance of this case; 5) customary fee for similar work in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the clients or circumstances; 8) the amount involved and results obtained; 9) the experience, reputation, and ability of counsel; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; 12) awards in similar cases; and 13) any other factors. *Johnson,* 488 F.2d 514, 717–19 (5th Cir. 1974).

final hearing, at which time Debtor would be required to present evidence that cause existed to justify the dismissal of her bankruptcy case. Indeed, the arguments and information presented by the Debtor changed from the filing of the Motion through the first and second hearings thereon. It is therefore reasonable—and should be expected—that the trustee's counsel would research the arguments raised by Debtor and prepare for each hearing accordingly. While it is understandably frustrating that the administrative expenses in this case are already so high, the trustee has a fiduciary duty to the bankruptcy estate and its creditors, opposing a motion to dismiss a case with substantial unexempt assets is within the scope of those duties, and conducting legal research and preparing for hearings scheduled by the Court is appropriate. Even if the Court were inclined to disallow the May 2, 2019 time entries, or time entries by attorneys and professionals other than the trustee's primary counsel, Mr. Bargar, such reduction is already exceeded by the trustee's voluntarily reduction of fees from $19,202 to $15,000. Having reviewed the Application, and for the forgoing reasons, the Court concludes that the hourly rates and the number of hours billed are reasonable and the Application should be granted.

Accordingly, for the reasons set forth above and at the hearings on the matters, it is

**ORDERED** that the Motion is **DENIED.**

**IT IS FURTHER ORDERED** that the chapter 7 trustee shall refrain from taking any action with respect to the sale of Debtor's home for forty-five (45) days.

**IT IS FURTHER ORDERED** that the Objection is **SUSTAINED** to the extent Debtor's claimed exemptions exceed those allowed under Georgia law. Debtor is directed to file an amended Schedule C within twenty-one (21) days of the entry of this order.

**IT IS FURTHER ORDERERD** that the Application is **GRANTED** and the chapter 7 trustee is allowed an administrative claim totaling $15,209.42.

The Clerk is directed to serve a copy of this Order upon Debtor, counsel for Debtor, the chapter 7 trustee, and counsel for the chapter 7 trustee.